UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHARLES L. EKSTAM and FUEL ) | |
| PREPORATOR INTERNATIONAL, INC., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 4:04CV00187 AGF |
| ) | |
| C. BRAD EKSTAM, DIESEL ) | |
| PERFORMANCE PRODUCTS, INC., and ) | |
| C. BRAD EKSTAM d/b/a DIESEL ) | |
| PERFORMANCE PRODUCTS CO., ) | |
| ) | |
| Defendants. ) | |

## MARKMAN ORDER

## I. BACKGROUND

This matter is before the Court[1] for a construction of patent claim terminology

pursuant to Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996).  In this action,

Plaintiffs Charles L. Ekstam and Fuel Preporator, International, Inc. ("FPI"), contend that

Defendants C. Brad Ekstam, Diesel Performance Products, and C. Brad Ekstam d/b/a

Diesel Performance Products Co. have infringed U.S. Patent No. 5,355,860 ("the '860

Patent"), issued to Plaintiff Charles L. Ekstam and exclusively licensed to FPI.  The '860

Patent pertains to a "fuel delivery system for removing air from fuel delivered to an

engine, and particularly a diesel engine."  ('860 Patent, Abstract).  The Court held a

_____

[1] The parties have consented to the exercise of jurisdiction by the undersigned
United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

Markman hearing to determine the construction of the claims at issue. Prior to the hearing, the parties submitted briefs and a joint claim construction document. (Doc. Nos. 55, 65 & 66). At the hearing, Plaintiffs presented the testimony of Plaintiff Charles L. Ekstam and an expert witness, Professor Virgil Flanigan.

In their Joint Memorandum seeking claim construction (Doc. No. 55), the parties initially requested construction of claims 1 through 4, 6 through 11, and 14 through 16. Of these, claims 1, 8, 14, 15, and 16 are independent, and the remaining claims are dependent. At the hearing, the parties conceded that there is no substantial dispute with regard to claims 3, 4, and 10. Plaintiffs also acknowledge that they are not asserting claims 6, 11, and 16, obviating any need for court construction with respect to those claims. Defendants have also filed a motion for partial summary judgment on grounds of invalidity as to certain claims, now limited to claims 8 and 14.

Regarding the claims that remain at issue, the parties dispute the construction of nearly all of the language in claims 1, 2, 8, 9, 14, and 15. In addition, although in agreement with respect to most of the language of claim 7, the parties dispute whether claim 7 properly depends from claim 1 or claim 6.

## II.  STANDARD FOR CLAIM CONSTRUCTION

A claim of patent infringement involves a two-step process. The court must first construe the proper meaning of disputed claim terms, and then the trier of fact determines whether the accused product or method infringes the properly construed asserted claims. Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1581-82 (Fed. Cir. 1996). In

connection with the first step, the court is obligated to construe the proper meaning of disputed claim terms as a matter of law.  Markman, 517 U.S. at 372; Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc., 289 F.3d 801, 807 (Fed. Cir. 2002).

The Federal Circuit, en banc, recently clarified the process trial courts should follow in construing disputed claim terms.  See Phillips v. AWH Corp., 415 F.3d 1303 (Fed. Cir. 2005) (en banc).  The Circuit Court confirmed that the starting place for such construction must be the words of the claims themselves.  Phillips, 415 F.3d at 1312; Vitronics, 90 F.3d at 1582 (Fed. Cir. 1996) ("we look to the words of the claims themselves . . . to define the scope of the patented invention").   The words of the claims "are generally given their ordinary and customary meaning."  Vitronics, 90 F.3d at 1582. "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective date of the patent application."  Phillips, 415 F.3d at 1313.  A person of ordinary skill in the art reads a claim in the context of the entire patent, including the specification, and is not limited to the context of the particular claim in which the disputed term appears.  Id.; Multiform Desiccants, Inc. v. Medzam, Ltd., 133 F.3d 1473, 1477 (Fed. Cir. 1998).  As such, the en banc Court has reaffirmed the principle that the decision-making process begins with a review of the claims, the specification, and the prosecution history.  Phillips, 415 F.3d at 1313.

In the construction process, the court should be guided by the context in which a term is used as well as other claims of the patent, both asserted and unasserted.  Id. 415

F.3d at 1304; <u>Vitronics</u>, 90 F.3d at 1582. Claim terms are usually used consistently within a patent, and as such, usage on one claim can inform the meaning of the same term in another claim. <u>Phillips</u>, 415 F.3d at 1314, <u>citing</u> <u>Rexnord Corp. v. Laitram Corp.</u>, 274 F.3d 1336, 1342 (Fed. Cir. 2001). Differences among claims are also important, and as such, the courts have long recognized that "the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." <u>Phillips</u>, 415 F.3d at 1314-15, <u>citing</u> <u>Liebel-Flarsheim Co. v. Medrad, Inc.</u>, 358 F.3d 898, 910 (Fed. Cir.), <u>cert. denied</u>, 534 U.S. 925 (2004); <u>accord</u>, <u>SRI Int'l v. Matsushita Elec. Corp. of America</u>, 775 F.2d 1107, 1122 (Fed. Cir. 1985) (en banc).

Because the claims are part of "a fully integrated written instrument," <u>Markman</u>, 52 F.3d at 978, the claims "must be read in view of the specification, of which they are a part." <u>Id.</u> at 979. As the Federal Circuit reconfirmed in <u>Phillips</u>, the specification "is the single best guide to the meaning of a disputed term," and is usually dispositive. <u>Phillips</u>, 415 F.3d at 1315 (quoting <u>Vitronics</u>, 90 F.3d at 1582). "The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." <u>Renishaw PLC v. Marposs Societa' Per Azioni</u>, 158 F.3d 1243, 1250 (Fed. Cir. 1998). Although words are normally deemed to be given their ordinary meaning, where the specification reveals that the patentee has ascribed a special meaning to a claim term, the inventor's special meaning or "lexicography" will control. Likewise, where the specification reveals a disclaimer of the

scope of the claim, that, too, will control.  <u>Phillips</u>, 415 F.3d at 1316.  In addition, the

court should consider the prosecution history where it is in evidence.  <u>Markman</u>, 52 F.3d

at 980; <u>Phillips</u>, 415 F.3d at 1317.

Although the Federal Circuit has reconfirmed the importance of the intrinsic

evidence, consisting of the claim language, the specification, and the prosecution history

where in evidence, it also recognized that a court may, in appropriate circumstances, rely

on extrinsic evidence, including dictionaries, treatises and expert and investor testimony.

<u>Phillips</u>, 415 F.3d at 1317.  The Court recognized, however, that while often useful, such

extrinsic evidence is, for a variety of reasons, generally less reliable than the intrinsic

evidence.  <u>Id.</u> at 1319.  Although the undersigned received the testimony of both the

inventor and Plaintiffs' expert witness to gain a background understanding of the

technology, the Court's analysis of the '860 Patent is based entirely on intrinsic evidence

consisting of the claim language, specification, and prosecution history.

**III.  CONSTRUCTION OF THE DISPUTED CLAIMS**

<u>**CLAIM 1**</u>

Four issues remain with respect to claim 1, below, with the disputed language in

italics:

> 1.  *A fuel delivery system for removing undesired components from fuel delivered from a fuel tank to an engine comprising, in combination:*
> [issue #1]

an engine;[2]

*initial fuel filter means for removing water from fuel received from the fuel tank; and* [issue #2]

*secondary fuel filter means including an outlet in fluidic communication with said engine and an inlet in fluidic communication with said initial fuel filter means and located downstream therefrom for receiving fuel containing an undesired gas from said initial fuel filter means and separating substantially all of said undesired gas from fuel received therein prior to passage of said fuel through the outlet,* [issue #3]

*said secondary fuel filter means including a vessel defining a hollow interior chamber in fluidic communication with a return line in fluidic communication with said fuel tank for returning fuel and undesired gas thereto, and a filter media positioned within said chamber for immersion in fuel received therein and a conduit located within said filter media for delivering fuel passing through said filter media to said outlet.* [issue #4]

Claim 1; Issue 1 - The Preamble

The first dispute in claim 1 pertains to the construction of the preamble. Plaintiffs assert that the preamble merely states a purpose or intended use of the invention and thus does not limit the claim. See Invitrogen Corp. v. Biocrest Mfg., L.P., 327 F.3d 1364, 1370 (Fed. Cir. 2003); Apple Computer, Inc. v. Articulate Systems, Inc., 234 F.3d 14, 22 (Fed. Cir. 2000). Defendants assert that it is permissible to consider the preamble when it gives meaning to the other elements of the claimed invention or is otherwise necessary to properly define the invention, citing Bell Communications Research, Inc. v. Vitalink Communications Corp., 55 F.3d 615, 640 (Fed. Cir. 1995). Defendants further assert that

---

[2] The parties initially disputed the construction of "an engine," but agreed at the Markman hearing that their differences were not material and to construe it as "an internal combustion engine."

the "fuel delivery system" is defined in the specification to consist of the following essential elements: (1) a water separation filter; (2) a particulate filter; (3) a fuel pump; (4) a regulator valve; and (5) an air filter.

While it is generally true that the preamble does not limit the claim, there is no litmus test for determining when a preamble will serve as a limitation. The determination of a preamble's effect can only be made by review of the entirety of the patent and the specific claim of which it is a component. In re Cruciferous Sprout Litigation, 301 F.3d 1343, 1347 (Fed. Cir. 2002), cert. denied, 538 U.S. 907 (2003); Bell v. Vitalink, 55 F.3d at 621. "In general, a preamble limits the invention if it recites essential structure or steps, or if it is 'necessary to give life, meaning, and vitality' to the claim." Catalina Mktg., 289 F.3d at 808 (citation omitted). A preamble is not limiting, however, "'where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention.'" Id. (quoting Rowe v. Dror, 112 F.3d 473, 478 (Fed. Cir. 1997)).

Although asserting that consideration of the preamble is necessary here, Defendants offer no explanation as to how the terms in the preamble either give meaning to the other elements of the claimed invention or are necessary properly to define the claim. Nor does the Court perceive any such function of the preamble in claim 1. In this instance, the claim completely defines the subject matter of the claim and structure of the claim in the claim body, and one need not reference any terms in the preamble to understand or define the invention set forth in the claim. The generic description of the

subject matter of the claim in the preamble is not, as Defendants appear to contend, an invitation to import all of the limitations set forth in the preferred embodiment. <u>Allen Eng'g Corp. v. Bartell Inds., Inc.</u>, 299 F.3d 1336, 1346 (Fed. Cir. 2002) (where preamble referenced a "self-propelled, fast steering motorized riding trowel for finishing a concrete surface," term "fast steering" was merely laudatory phrase that set forth the purpose of the claimed invention); <u>Apple Computer</u>, 234 F.3d at 22 (reference in preamble to a method for "operation upon said windows and said data in said windows," by user of a computer display system did not serve to limit claims to require windows containing "data" on which a user may operate; language merely stated purpose or intended use and did not serve to give meaning to and properly define invention). From a review of the claim as a whole, the Court finds the preamble does no more than set forth an intended purpose or use, and does not function as a claim limitation.

Assuming <u>arguendo</u> the Court were to accept that the preamble served to limit the claim, the construction offered by Defendants would still fail as the Court finds no support for such a construction in either the claim language, the specification, or the prosecution history. Defendants assert that the specification describes "'the fuel delivery system of the present invention' as 'a multi-stage filter system . . . employed for removing particulates, water and air from the fuel before delivery to the cylinder or an internal combustion engine,'" citing to col. 1, lines 47-50. But Defendants misquote the language of the specification. The language in col. 1, lines 46-50, makes plain that a multi-stage filter system that includes the removal of particulates is "preferably" employed.

Likewise, Defendants misquote col. 1, lines 55-60, deleting the word "preferably," as well as col. 2, lines 55-57, deleting the language stating that it describes the "preferred embodiment."

Nor does the language referencing bracket 104, found in col. 4, lines 49-54, compel Defendants' construction. While the specification, in describing the preferred embodiment, states that "[t]he essential components of the fuel delivery system **10** hereof are mounted on a bracket **104**," the fact that the essential components are mounted on that bracket does not mean that each and every one of the components so mounted is necessarily essential. Moreover, it is clear that this portion of the specification is simply describing the preferred embodiment. Generally claims are not limited to the preferred embodiment. See Phillips, 415 F.3d at 1323 ("we have expressly rejected the contention that if a patent describes on a single embodiment, the claims of the patent must be construed as being limited to that embodiment"); Liebel-Flarsheim, 358 F.3d at 906 ("even when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction'") (citation omitted).

Here, the Court finds no language suggesting an intention to limit the claim to the preferred embodiment. To the contrary, the specification makes plain that the primary filter may or may not include a filter for particulates. See, e.g., col. 2, lines 66-68 ("The

initial fuel filter means <u>may</u> include a water separation filter **16** and a particle filter **18**, as well as a fuel pump **20** and a regulator valve **22**)(emphasis added); [Abstract] ("A fuel delivery system for removing air from fuel delivered to an engine . . . includes an engine, a primary water separation filter, and a secondary air separation filter."); col. 6, lines 1-2 ("initial fuel filter means for removing water from fuel received from the fuel tank"). In addition, several of the elements Defendants attempt to incorporate into this language are contained within dependent claim 7, and under the doctrine of claim differentiation, an independent claim should not be construed as containing a limitation that is explicitly listed in one of its dependent claims.[3] <u>SunRace Roots Enter. Co. v. SRAM Corp.</u>, 336 F.3d 1298, 1303 (Fed. Cir. 2003).

As such, the Court agrees that there is no basis for construing the preamble as anything other than a statement of intended use or reading into the "fuel delivery system" listed in the preamble the limitations listed by Defendants.

<u>Claim 1; Issue 2</u> – <u>Initial Fuel Filter Means</u>

The parties disagree as to the construction of the term "initial fuel filter means for removing water from fuel received from the fuel tank." Plaintiffs assert that one of ordinary skill in the art would understand this term to mean "a water filter comprising a filter head and removable cartridge and equivalents thereof." Mirroring their position with regard to the preamble, Defendants assert that the "initial fuel filter means" consists

---

[3] For reasons discussed below, the Court rejects Defendants' contention that claim 7 properly depends from claim 6, rather than from claim 1.

of a water separation filter, a particulate filter, a fuel pump, and a regulator valve.

The parties essentially are in agreement that this is a means-plus-function limitation, under §112, ¶ 6. As such, the Court must first determine the function identified in this language, and then identify the structure that provides the means for accomplishing this function. Kemco Sales, Inc. v. Control Papers Co., Inc., 208 F.3d 1352, 1360 (Fed. Cir. 2000); IMS Tech., Inc. v. Haas Automation, Inc., 206 F.3d 1422, 1429-30 (Fed. Cir. 2000). In terms of defining the function, the language of the claim is not ambiguous; the function is to remove water from fuel that is received from the fuel tank. The parties disagree as to the structure in the specification that provides the means for accomplishing this function.

The Court finds that the structure which corresponds to the function of removing water from the fuel is disclosed in the specification and discussed at col. 3, lines 5-12. It includes a filterhead and a removable cartridge with a drain valve, such cartridges "being well know in the art." Col. 3, line 14; see also, col. 1, lines 21-23.

While Defendants agree that the initial fuel filter means includes a filterhead and removable cartridge, Defendants assert, as they did regarding issue 1, that the water filter means includes a water separation filter, particle filter, fuel pump, and regulator valve, citing to col. 2, lines 65-68. Once again, however, the language quoted by Defendants is repeatedly and expressly qualified in the specification, which states that the initial fuel filter means "may" include such elements.

Moreover, as Plaintiffs note, it is improper to restrict a means-plus-function limitation by requiring a structure that performs functions different from the function expressly recited in the claim. Creo Prods., Inc. v. Presstek, Inc., 305 F.3d 1337, 1345 (Fed. Cir. 2002). The structure disclosed in the written description is "corresponding" to the claimed means under §112 only if the structure is clearly linked by the written description or the prosecution history to the function recited in the claim. Unidynamics Corp. v. Automatic Products Int'l, Ltd., 157 F.3d 1311, 1319 (Fed. Cir. 1998); B. Braun Medical, Inc., v. Abbott Laboratories, 124 F.3d 1419, 1424 (Fed. Cir. 1997). None of the additional items listed by Defendants perform the function of removing water from the fuel. The specification states that the fuel pump pressurizes the fuel (col. 3, lines 26-27), while the particulate filter removes unwanted solids from the fuel (col. 3, lines 33-36), and the regulator valve controls the flow rate of the fuel. Col. 3, lines 36-38. In addition, these functions are performed after the water filter removes water from the fuel. Col. 3, lines 20-35. It would be improper to require these additional limitations as part of the initial fuel filter means. See Unidynamics, 157 F.3d at 1319.

As such, the Court finds that the initial fuel filter means is "a water separation filter comprising a filterhead and removable cartridge with a drain valve, or equivalents thereof." Col. 1, lines 21-23; col 3, lines 5-14.

Claim 1; Issues 3 & 4 – The Secondary Fuel Filter Means and The Vessel

With regard to the secondary fuel filter means, the Court must first determine whether it is in fact a means-plus-function claim. Defendants assert that it is a means-

12

plus-function claim governed by § 112, ¶ 6, with two separate functions:  first, a means "for receiving fuel containing an undesired gas from said initial fuel filter means," and second, a means "for separating substantially all of said undesired gas from fuel received therein prior to passage of said fuel through the outlet."  While Plaintiffs essentially agree that the element provides for these two functions, Plaintiffs assert that there is sufficient structure in the claim elements themselves to take the claim elements out of the scope of § 112, ¶6.

"The use of the word 'means,' which is part of the classic template for functional claim elements, gives rise to 'a presumption that the inventor used the term advisedly to invoke the statutory mandates for means-plus-function clauses.'"  Sage Prods., Inc. v. Devon Indus., Inc., 126 F.3d 1420, 1422-23 (Fed. Cir. 1997) (quoting York Prods., Inc. v. Central Tractor Farm & Family Ctr., 99 F.3d 1568, 1574 (Fed. Cir. 1996)).  The case law recognizes two specific rules, however, which "overcome this presumption."  The first is where a claim element uses the word "means," but does not recite any function.  Such an element does not invoke § 112, ¶ 6.  Rodime PLC v. Seagate Technology, Inc., 174 F.3d 1294, 1302 (Fed. Cir. 1999), cert. denied, 528 U.S. 1115 (2000).  "Second, even if the claim element specifies a function, if it also recites sufficient structure or material for performing that function, § 112, ¶ 6 does not apply."  Id.; accord, Phillips, 415 F.3d at 1311 ("Means-plus function claiming applies only to purely functional limitations that do not provide the structure that performs the recited function."); Sage Prods., 126 F.3d at 1427-28.

To determine whether the element specifies a function, the court relies primarily on the claim language itself.  York Prods., 99 F.3d at 1574.  Here, the Plaintiffs do not dispute that the claim element specifies the two functions recited by Defendants, and the plain language of the claim supports this conclusion.  Plaintiffs assert, however, that there is sufficient structure recited in the claim element itself to take it outside the bounds of § 112, ¶ 6.  To avoid ¶ 6, it is not necessary to recite "every last detail of the structure disclosed in the specification for performing the claimed . . . function. . . .  Instead, the claim need only recite 'sufficient' structure to perform entirely the claimed function."  Rodime, 174 F.3d at 1304.

The Court agrees that the element contains sufficient structure with respect to the first function of "receiving fuel containing an undesired gas from said initial fuel filter means."  The claim element itself specifies a structure, namely, "an outlet in fluidic communication with the engine and an inlet in fluidic communication with the initial fuel filter means," and the location of the inlet is further specified as being "downstream" from the initial fuel filter means.[4]  See Phillips, 415 F.3d at 1311 (no means-plus-function claim where claim language identifies "internal steel baffles" as the structure for performing the function of increasing the shell's load-bearing capacity); Envirco Corp. v.

_____

[4] Assuming arguendo the Court were to construe the element as a means-plus-function claim, it would make little difference in interpretation.  The corresponding structure appears at col 1., lines 65-67; col. 2, lines 45-49; col. 3, lines 45-47.  It includes an inlet in fluidic communication with an inlet line and an outlet fluidically connected to an outlet line leading to the engine, and equivalents thereof.

Clestra Cleanroom, Inc., 209 F.3d 1360, 1365 (Fed. Cir. 2000) (use of term "baffle," itself a structural term, together with the description in the claim, overcomes presumption of § 112, ¶ 6).

Read in isolation, however, this element would not appear to specify any structure for the second function of "separating substantially all of said undesired gas from fuel received therein prior to passage of said fuel through the outlet."  Plaintiffs assert that the necessary structure is found in the next element, which describes in detail the structure of the function of separating the gas from the fuel.  The Court agrees.  Read together, the two elements sufficiently describe the structure of this secondary fuel filter means, as understood by those skilled in the art, to rebut the presumption that it is a means-plus-function term.  See Allen Eng'g, 299 F.3d at 1348 (sufficient structure recited in claim itself for "gearbox means for rotating said blade means"); Envirco, 209 F.3d at 1365-66 (Fed. Cir. 2000) (sufficient structure recited in claim for "baffle").

With regard to the second function, as set forth in the claim itself, the secondary fuel filter means includes (i) "a vessel defining a hollow interior chamber," (ii) which vessel is "in fluidic communication with a return line," (iii) which return line is "in fluidic communication with said fuel tank for returning fuel and undesired gas thereto," and there is also (iv) "a filter media positioned within said chamber," (v) which filter media is immersed in the fuel received in the chamber, and (vi) a "conduit" which is "located within said filter media for delivering fuel passing through said filter media to said outlet."  Again, these terms are sufficiently clear to one skilled in the art for the structure

15

and location of the elements to be understood. As such, the Court construes the claims pursuant to "standard claim construction rules." <u>Envirco</u>, 209 F.3d at 1365.[5]

Looking to the disputed language related to the first function, Defendants assert that the term "communicate" means "to be connected," and that elements thus include "an inlet *connected to* the initial fuel filter means and "an outlet *connected to* the engine." The language proposed by Defendants implies a direct physical connection. There is no support for such a limitation, however, in either the claim language itself or the specification. The claim language states that the inlet and outlet will be in "fluidic communication." One with ordinary skill in the art would understand this to mean that fluid would flow from the initial fuel filter to the inlet and from the outlet to the engine, but no direct connection is necessarily required by this language. For example, in another embodiment of the invention, the fuel presumably could travel through yet another process before delivery to the engine. Consistent with such a possibility, the Court notes that claims 8 and 14, which describe the filter, speak of "direct fluidic communication," while other claims, including claims 1 and 15, which describe a more generalized fuel delivery system, do not.

In connection with the second function, Defendants assert that the elements of the secondary fuel filter include "a vessel with an uppermost housing portion and a

<hr>

[5] Again, even if the Court were to assume that § 112, ¶ 6 controlled, it would make little difference to this Court's interpretation. <u>See</u> col. 1, lines 62 - col. 2, line 2; col. 2, lines 22-35; col. 3, line 56 - col. 4, line 48; col. 5, lines 21-49.

lowermost canister portion defining a hollow chamber." While these limitations are part of the preferred embodiment, they are not suggested by the claim language itself, which describes only "a vessel defining a hollow interior." As such, there is no basis for importing this limitation into this term. See Arlington Indus., Inc. v. Bridgeport Fittings, Inc., 345 F.3d 1318, 1327 (Fed. Cir. 2003). Moreover, the limitations suggested by Defendants are found in dependent claim 3, and under the doctrine of claim differentiation, it is improper to incorporate these elements into claim 1. Liebel-Flarsheim, 358 F.3d at 910; Comark Communications, Inc. v. Harris Corp., 156 F.3d 1182, 1187 (Fed. Cir. 1998).

Next, again construing "fluidic communication," Defendants assert that the return line is "connected to the vessel and the fuel tank." The Court rejects this interpretation for the same reason stated above. The claim language requires only that the interior chamber be "in fluidic communication with" a return line "in fluidic communication with" the fuel tank. Use of the term "connected to" unnecessarily limits the element.

With regard to the filtering function itself, Defendants assert that the proper construction is "a filter media, which allows fuel to pass but not air, positioned with the chamber and immersed or submerged in the fuel." Plaintiffs propose for their construction, that "the second fuel filter separates substantially all of the undesired gas from the fuel prior to the passage of the fuel through the outlet. . . . Undesired gas is any undesired entrained air and other vapors and gasses entrained in the fuel."

While the Court rejects Defendants' contention that this should be construed as a means-plus-function claim, the Court finds that the words "undesired gas" and the function of "separating substantially all of said undesired gas," are ambiguous, thus requiring an examination of the intrinsic evidence. The Court cannot accept Defendants' construction, however, that the filter "allows fuel to pass but not air," as it is not supported by the specification. In referencing the secondary fuel filter, the specification repeatedly references the removal of "residual air *bubbles*, entrapped and entrained in the fuel." Col. 1, lines 52-54 (emphasis added). The specification and drawings state that the filter media separates these bubbles. <u>See</u> col. 2, lines 22-23, 29-31; col. 5, lines 26-39. Thus, the Court finds that "undesired gas" means any "undesired bubbles of entrained air or other vapors and gasses entrained or entrapped in the fuel."

Finally, Defendants assert that the word "immersion" should be construed to mean "submerge which in turn means immerse which means to cover completely with liquid; submerge," citing to the <u>American Heritage Dictionary</u> (1986). Asserting that the language is not ambiguous, Plaintiffs assert the following construction: "The second fuel filter also includes a filter media positioned within the interior chamber of the vessel so that the filter media can be immersed in the fuel received in the chamber." The Court believes that the term "immersion" as used herein would be understood by those skilled in the art, and that further definition is unnecessary. <u>Multiform Desiccants</u>, 133 F.3d at 1477. Moreover, the definition proposed by Defendants does not do anything to better clarify the language.

18

As such, the Court construes the secondary fuel filter means and vessel as follows:

"The secondary fuel filter, which is located downstream from the initial fuel filter, includes an outlet in fluidic communication with the engine and an inlet in fluidic communication with the initial fuel filter. The secondary fuel filter receives fuel containing an undesired gas from the initial fuel filter and separates substantially all of said undesired gas prior to passage of the fuel through the outlet. Fluidic communication means that fluid can transfer from one element to another. Undesired gas is any undesired bubbles of entrained air or other vapors and gasses entrained or entrapped in the fuel.

The secondary fuel filter also includes a vessel defining a hollow interior chamber, which chamber is in fluidic communication with a return line, which is in fluidic communication with the fuel tank, for returning fuel and undesired gas to the fuel tank. The secondary fuel filter also includes a filter media positioned within the chamber of the vessel so that the filter can be immersed in the fuel received in the chamber. The secondary fuel filter also has a conduit located within the filter media for delivering fuel passing through said filter media to the outlet."

## CLAIM 2

Claim 2 depends from claim 1 and reads as follows, with the disputed language italicized:

"2. A fuel delivery system as set forth in claim 1, wherein *said filter media is a paper filter presenting substantially no openings therethrough having a greater dimension than 25 microns.*"

Plaintiffs assert that the language is not ambiguous and should be construed in accordance with its ordinary meaning. It is unclear whether Defendants are claiming the language is ambiguous or unambiguous; they claim the language is unambiguous – subject to the definition of the filter media proffered by Defendants in claim 1. Based on

the prosecution history, which at one place[6] defines the filter media as "having substantially no openings of a greater dimension than about 25 microns for preventing the passage of air," Defendants assert that the language should be construed to mean "a filter media which allows fuel to pass but not undesired gas."

The Court finds, however, that the language of the claim is unambiguous as written. Consistent with Plaintiffs' proposed construction, one of ordinary skill in the art would understand this term to mean as follows: "the filter media is a paper filter that has substantially no openings through it with dimensions greater than 25 microns." This language is wholly consistent with its use in the specification. See col. 2, lines 21-35; col. 4, lines 25-33; col. 5, lines 26-49; col. 6, lines 21-24. And the Court finds nothing in the specification suggesting a meaning other than the ordinary meaning. Nor does the Court find, from a careful review of the prosecution history, that the definition proposed by Defendants was either offered or necessary to distinguish this claim from the prior art. Indeed, the construction proffered by Defendants is inconsistent with the specification and drawings, which make clear that "substantially" all, but not necessarily "all" the air is separated. See e.g., col. 2, lines 33-34; col. 5, lines 9-10; fig. 3. Moreover, the Court has difficulty imagining, from a technical standpoint, how a paper filter could be porous enough to permit "fuel to pass, but not air," and neither the claims nor the specification suggest the paper filter possesses such a characteristic. Rather, as set forth above, it

_____

[6] Prosecution history of the '860 patent, Amendment, 12/13/93, p. 7, first paragraph.

filters entrained air bubbles.

## CLAIM 3

At the <u>Markman</u> hearing, the parties conceded that there is no real issue with respect to the language of claim 3, and the Court finds that its language is unambiguous and provides as follows: "the vessel includes a housing section and a canister section. The canister section is removably mounted to the housing section. The filter media is included in an elongated removable cartridge that is positioned within the canister section."

## CLAIM 4

The parties also conceded there is no real issue with respect to Claim 4. The Court finds that the language of claim 4 is unambiguous and provides as follows: "the housing includes a structure for threadably mounting the filter cartridge to the housing."

## CLAIM 7

Claim 7 reads as follows, with the disputed language italicized:

"7. A fuel delivery system as set forth in *claim 1*, wherein said initial fuel filter means includes a first water separation filter and a second particulate filter positioned upstream from said secondary filter."

As clarified at the hearing, the only substantial dispute regarding claim 7 is whether it depends from claim 1 or claim 6. Consistent with the claim language itself, Plaintiffs assert it depends from claim 1. Relying on a reference in the prosecution history, Defendants assert that the reference to claim 1 in the claim language is an error, and that claim 7 actually depends from claim 6. The Court agrees with Plaintiffs.

As originally filed, claims 6 and 7 appeared as claims 8 and 9.  The original claims 1-10 were rejected for a variety of reasons.  Claims 1, 2 and 10 were rejected for obviousness.  Claim 3 was rejected because the term "said interior" in claim 3, which depended from claim 1, lacked an antecedent basis.  Claims 4-6 were rejected simply because they depended from the defective claim 3.  Claims 8 and 9 (now claims 6 and 7), which depended from claims 2 and 1, respectively, were objected to as being dependent upon a rejected base claim, but would be allowed if rewritten in independent form including all of the limitation of the base claim and any intervening claim.  Ex. 1, tab 7, p. 3; Pros. Hist. p. 41.

An amendment was filed on December 16, 1993.  Ex. 1, tab 9; Pros. Hist. p. 47. In the amendment, original claims 2 and 3 were cancelled.  To address the indefiniteness problem, the language of original claim 3 was redrafted to clarify that the vessel defined a hollow interior, and the limitations of original claims 2 and 3 were included as elements of claim 1.  Amendment, pp. 1-2, 6; Ex. 1, tab 9, pp. 47-48, 52.  With the cancellation of claims 2 and 3, claims 8 and 9 were renumbered as claims 6 and 7.  In the amendment, claim 8 (now claim 6) was rewritten to be in independent form, including all the limitations of the base claim and any intervening claims.  Amendment, pp. 2-3, 5-6; Ex. 1, pp. 48-9, 51-2.  As drafted, however, no change was made to claim 9 (now claim 7). Amendment, pp. 2-3; Ex. 1, pp. 48-9.  Looking at the claim language itself, claim 9 had originally depended from claim 1, and as amended, would continue to do so.

The language upon which Defendants rely appears at the top of page 6 of the Amendment, which states, "Claim 9 depends from Claim 8, and is likewise allowable, because the dependent claim incorporates the limitations of the base claim." Ex. 1, p. 52. From a review of claim language itself and the entire prosecution history, however, it is clear that the reference to claim 8 in this portion of the Amendment is a typographical error; it should reference claim 1. Apart from this single reference, there is nothing in the claim language or the prosecution history to suggest an intent that original claim 9 depend from anything but claim 1. And changing the claim from which it depended was unnecessary to address the examiner's concern. The original objection to claim 9 (now claim 7) was that it depended from claim 1, which had been rejected, but inasmuch as claim 1 was amended to address the examiner's concern, presumably there would be no need to make further change to original claim 9 (now claim 7). Further support for this conclusion is found at page 9 of the Amendment, where it states unequivocally, "Dependent claims 5-9 are also allowable, because they depend from claim 1 and incorporate the limitations thereof." Ex. 1, p. 55.[7] As such, the Court concludes that the reference in claim 7 to claim 1, as the claim from which claim 7 depends, is correct.

Defendants further argue that even if claim 7 depends from claim 1, it is still the case that the "initial fuel filter means" set forth in claim 1 includes a water separation

---

[7] This language is also somewhat inaccurate, however, as claim 8 (now claim 6) was redrafted to be an independent claim which included most, but not all, of the limitations of amended claim 1.

filter, a particulate filter, a fuel pump and a regulator, and the doctrine of claim

differentiation should not control to suggest otherwise. This is nothing more than a

repetition of arguments rejected by the Court with respect to Claim 1. Claim 7 is

construed in accordance with its plain language to mean "the initial fuel filter means

includes a first water separation filter and a second particulate filter, both of which are

positioned upstream from the secondary fuel filter" referenced in Claim 1. <u>See</u> col. 1,

lines 56-61; col. 3, lines 1-8, 26-28.

### **CLAIM 8**

Claim 8 reads as follows, with the language at issue in italics:

> 8. *A filter for removing air from fuel received from a fuel tank prior to delivery to an engine* comprising: [issue #1]
>
> a substantially enclosed vessel including a fuel inlet, a fuel outlet leading to the engine, and a fuel return line leading to said storage tank, *said vessel including a normally upright tube presenting a substantially open upper margin defining an operating fuel level within said vessel*, said vessel further including means in direct fluidic communication with said outlet for detachably mounting a cartridge thereon; [issue #2] and
>
> a (sic) *air removal filter cartridge* detachably received within said vessel, said cartridge being positioned below said operating fuel level for allowing air bubbles separated by said cartridge to float upwardly to said fuel level and be discharged through said fuel return line. [issue #3]

<u>Claim 8; Issue 1 - The Preamble</u>

The first issue in claim 8 again pertains to the construction of the preamble. As

above, Plaintiffs assert that the preamble merely states a purpose or intended use of the

invention and thus does not limit the claim. Defendants, on the other hand, again assert

that the term "filter" must be construed as "a filter for removing air which allows fuel to pass but not air" in order to distinguish the "air removal filter cartridge" from prior art, citing to its prior arguments related to "filter media" in claim 1.

As Plaintiffs correctly note, however, if nothing in the claim preamble serves to distinguish prior art, the claim preamble is not a limitation. Compare STX, LLC v. Brine, Inc., 211 F.3d 588, 591 (Fed. Cir. 2000) (preamble not a limitation when used only to state a purpose or intended use and structurally complete invention is defined in body of the claim) with Invitrogen, 327 F.3d at 1370 (where reference to "improved competence" was required by PTO to distinguish it from prior art and was so amended in claim process, such reliance on the language in the preamble to distinguish it from prior art transforms preamble into a limitation). Here, in connection with claim 1, the Court has already rejected Defendants' argument that the proffered definition was relied upon in the claims process to distinguish it from the prior art. As such, this argument provides no basis for construing the preamble as a claim limitation. Nor does a review of the claim language as a whole suggest that the preamble was intended as anything other than a statement of purpose or intended use.

In any event, for the reasons set forth above with respect to claim 1, the Court finds that the construction of the term "filter for removing air from fuel" suggested by Defendants is not supported by either the language of the claim itself, which clearly references "air bubbles separated by said cartridge," or the specification. See col. 7, lines 4-8.

<u>Claim 8; Issue 2 – The Vessel & Upright Tube</u>

The parties agree that for the most part, the terms in the first element of claim 8 are not ambiguous. Plaintiffs assert that the language in the last clause referencing a "means . . . for detachably mounting a cartridge thereon" is a means-plus-function claim, and Defendants do not contend otherwise. The Court agrees. The structure described in the specification is a threaded coupling. <u>See</u> col. 2, lines 5-9; col. 4, lines 33; col. 7, lines 3-5. Thus, this portion of the claim is defined as "a threaded coupling or equivalents thereof for detachably mounting a cartridge which is in direct fluidic communication with such outlet, allowing fluid to travel directly between the cartridge and the outlet."

Defendants' arguments with respect to the vessel in Claim 8 center on the "normally upright tube." Defendants asserted at the hearing that the tube **88** is an "overflow tube." As the courts have recognized, claims are part of a "'fully integrated written instrument,'" consisting principally of the specification, and "'must be read in view of the specification, of which they are a part.'" <u>Phillips</u>, 415 F.3d at 1315 (quoting <u>Markman</u>, 52 F.3d at 978, 979). While language is normally given its ordinary meaning, the patentee may serve as his own lexicographer, and subscribe a meaning to a term in the specification that differs from or is more limited than the meaning it would otherwise have, and in such instance, "the inventor's lexicography governs." <u>Phillips</u>, 415 F.3d at 1316.

Throughout the specification, both in defining the invention itself and the preferred embodiment, the patentee has invariably described the upright tube as an "overflow tube."

See col. 1, lines 68; col. 2, lines 24; col. 2, lines 31; col. 4, lines 20-21; col. 5, lines 41-42.

Likewise, the Abstract described that the trapped bubbles float upward to the fuel level and "then spill over the upper margin of an upright tube within the vessel" leading to the fuel return line. Nowhere is the upright tube described in any other fashion. Accordingly, the Court finds that the substantially upright tube is defined to be "a substantially upright overflow tube." See Bell Atlantic Network Services, Inc. v. Covad Communications Group, Inc., 262 F.3d 1258, 1273 (Fed. Cir. 2001) (patentee "defined the term 'mode' by implication through the term's consistent use through the patent specification").

Defendants further assert that as described in the claim, the "normally upright tube" is not structurally or functionally connected to any element within the vessel." Plaintiffs do not suggest any such connection in the claim language itself, but assert that Defendants' argument is essentially one of invalidity rather than claim construction. The Court agrees, and will address Defendants' argument in connection with their motion for partial summary judgment.

Accordingly, the Court finds that one ordinarily skilled in the art would understand the challenged language pertaining to the vessel to be defined as follows:

> "a substantially enclosed vessel that includes a fuel inlet, a fuel outlet leading to the engine, and a fuel return line leading to the fuel storage tank. The vessel includes a normally upright overflow tube that presents a substantially open upper portion, which defines an operating fuel level with the vessel. The vessel further includes a threaded coupling or equivalents thereof for detachably mounting a cartridge which is in direct fluidic communication with such outlet, allowing fluid to travel directly between the cartridge and such outlet."

Claim 8; Issue 3 - The Air Removal Cartridge

The Court finds that the challenged language pertaining to the air removal filter cartridge is not ambiguous and does not require further definition by the Court.  As set forth above with respect to claim 1, Defendants' proffered definition of the "air removal filter cartridge," as "an air filter that allows fuel to pass but not air" is contrary to both the claim language itself, which expressly references "air bubbles separated by said cartridge," and the language of the specification, which also consistently references "air bubbles." The Court sees no reason to define any of the terms or language in this second element of claim 8 any differently than the claim language itself.

## CLAIM 9

The parties agree that the language of claim 9, which depends from claim 8, is not ambiguous, and that terms of the claim are used in the specification in a manner consistent with their ordinary meaning.  As such, there is no reason for the Court to construe claim 9. One of ordinary skill in the art would understand this term to mean: "The vessel includes a housing portion and a canister portion.  The canister portion is normally below the housing portion and threadably mounted to the housing portion."  To the extent Defendants assert that claim 9 depends from an invalid claim, Defendants' claim of invalidity with respect to claim 8 will be addressed separately in connection with the motion for partial summary judgment.

## CLAIM 10

The parties have agreed that no issues are raised with respect to claim 10, and the Court agrees that the language is not ambiguous.

## CLAIM 14

The parties have requested a construction of essentially all of the language of Claim 14, which appears below:

> 14. *A filter for removing entrained and entrapped air from fuel received from a fuel tank prior to delivery to an engine* comprising: [issue #1]
>
> *a substantially enclosed vessel including a normally upright tube presenting a substantially open upper margin defining an operating fuel level within said vessel, said vessel further including a means in direct fluidic communication with said outlet for detachably mounting a cartridge thereon;* and [issue #2]
>
> *a* (sic) *air removal filter cartridge detachably received within said vessel and including a filter element having substantially no openings therethrough having a dimension greater than about 25 microns for substantially complete separation of air from the fuel, said cartridge being positioned below said operating fuel level for allowing air bubbles separated by said cartridge to float upwardly to said fuel level and be discharged through said fuel return line.* [issue #3]

### Claim 14; Issue 1- The Preamble

Plaintiffs again assert that the term "filter" in the preamble of Claim 14 should be read as a limitation to mean a filter "which allows fuel to pass but not air," contending that without such a construction there is nothing in the claim to distinguish the filter from that shown in the prior art. The Court rejects this argument for the same reasons set for above with respect to claims 1 and 2.

Because the claim is somewhat poorly drafted and provides no antecedent basis for "said outlet" contained in the first element, the preamble is a bit helpful in providing some guidance as to the meaning of "the outlet." But while perhaps helping to define that the outlet leads to the engine, this is not a case where the claim steps or elements expressly incorporate by reference important phrases or terms from the preamble, as in Bell v. Vitalink, 55 F.3d at 621. The mere presence of an antecedent term does not necessarily cause the preamble to have a limiting function. See Catalina Mktg., 289 F.3d at 805, 810 (preamble not construed as limitation where first element referred to "such terminal," and the preamble referenced "the terminal"). That is especially true where, as here, the "outlet" is not referenced at all in the preamble. Nor is reference to the preamble necessary to define the claimed invention or understand a specific intended purpose, as in Cruciferous Sprout, 301 F.3d at 1347. Though one may argue the claim is not sufficiently definite for enforcement – a contention Defendants make in their motion for partial summary judgment – the preamble does not provide that definition or serve to limit the claim.

Even assuming the language of the preamble were read as part of the claim, the terms in the preamble are not at all ambiguous and do not require construction. In addition, for the reasons stated above with respect to earlier claims, neither the language of the claim nor the specification support Defendants' construction that the filter "allows fuel to pass but not air."

Defendants' remaining arguments regarding the preamble relate to Defendants' assertion that the claim is invalid, and will be addressed separately in connection with Defendants' motion for partial summary judgment.

Claim 14; Issue 2 - The Vessel

The parties agree that most of the terms in the first element in claim 14 are not ambiguous and are not used in a manner other than their usual meaning. Although it is not entirely clear whether Defendants are asserting that the term "normally upright tube" should be construed as an overflow tube,[8] the Court again adopts this construction of the term for the same reasons as set forth in the discussion pertaining to claim 8, issue 2. The Court also adopts the same construction of "fluidic communication" as before.

While contending that the term "vessel" is not ambiguous and is not defined in the specification in a manner other than the ordinary meaning, Defendants assert that vessel must include both an uppermost housing portion **56** and a lowermost canister portion. While this further limitation is included in dependent claim 3, the vessel is not so delimited in other portions of the specification or in other claims. See col. 1, line 62 - col. 2, line 2; col. 6, lines 11-19 (claim 1); col. 6, lines 62-68 (claim 8). Indeed, the specification makes clear that such a limitation to the vessel exists "[i]n particularly

---

[8] In the proposed claim language, Defendants proffer the construction of an overflow tube, but in the body of their argument they assert that the term "normally upright tube" is not ambiguous and is not used in a manner other than its ordinary meaning. Given the position taken in the summary related to both to this claim and others incorporating the same term, the Court will assume that Defendants are contending the term should be construed as an overflow tube.

preferred forms." As such, under the doctrine of claim differentiation, the Court rejects adding the further limitation regarding the upper housing portion and lower cannister portion to the vessel in this claim.

The parties agree that the last portion of this element, referencing a "means . . . for detachably mounting a cartridge," is a means-plus-function claim. Defendants assert that the "means in direct fluidic communication with said outlet for detachably mounting a cartridge thereon" is a "filter receiver." While language to this effect does appear at times in the specification, this language provides little definition to the "means" used, and the specification, throughout, references a "threaded" joinder. As such, the Court defines the means for detachably mounting the cartridge as "a threaded coupling or equivalents thereof for detachably mounting a cartridge which is in direct fluidic communication with such outlet, allowing fluid to travel directly between the cartridge and such outlet." <u>See</u> col. 2, lines 3-7; col. 4, lines 25-30; col. 6, lines 30-32; col. 7, lines 3-5.

The remainder of Defendants' arguments go to the issue of alleged invalidity, and will not be addressed at this time.

Accordingly, the Court finds that one ordinarily skilled in the art would understand the challenged language pertaining to the vessel to be defined as follows:

> "a substantially enclosed vessel including a normally upright overflow tube, presenting a substantially open margin, which defines an operating fuel level within said vessel. The vessel also includes a threaded coupling or equivalents thereof for detachably mounting a cartridge which is in direct fluidic communication with such outlet, allowing fluid to travel directly between the cartridge and such outlet."

Claim 14; Issue 3 - Air Removal Filter Cartridge

With respect to the final element of Claim 14, Plaintiffs assert that the terms are not ambiguous, and that no further construction is necessary. Defendants propose that the term "air removal filter cartridge" be defined as "an air filter as opposed to a water filter or particulate filter, which allows fuel to pass but not air." The Court finds the claim language to be clear and unambiguous, and that there is no basis for further specifying what the term is not, as Defendants seek to do. Moreover, the Court again rejects Defendants' assertion that the limitation be added to the filter element that it "allows fuel to pass but not air." The language at issue expressly states that it allows for "substantially complete" separation of air from the fuel and, as set forth above, the claim language and the specification repeatedly refers to the separation of "air bubbles." It is evident that extremely small air bubbles or air that does not present as a bubble might travel through the filter with the fuel. The remainder of Defendants' arguments again pertain to allegations of invalidity.

Accordingly, the Court finds that one ordinarily skilled in the art would understand the challenged language pertaining to the air removal filter cartridge as follows:

> "an air removal filter cartridge that is detachably positioned within said vessel, which includes a filter element having substantially no opening therethrough with a dimension greater than about 25 microns for substantially complete separation of air from the fuel. The filter cartridge is positioned below the operating fuel level for allowing air bubbles separated by said cartridge to float upwardly to the fuel level and be discharged through said fuel return line."

# CLAIM 15

The parties have requested construction of essentially all of the language of the claim, other than the "engine," as follows:

> 15. *A fuel delivery system for removing undesired components from fuel delivered from a fuel tank to an engine comprising, in combination:* [issue #1]
>
> *an engine;*
>
> *initial fuel filter means for removing water from fuel received from the fuel tank;* and [issue #2]
>
> *secondary fuel filter means including vessel walls defining an interior chamber having an outlet in fluidic communication with said engine, an inlet in fluidic communication with said initial fuel filter means for receiving fuel containing an undesired gas from said initial fuel filter means, and a return line opening;* [issue #3]
>
> *a filter element dividing said chamber into an inlet side and an outlet side, and providing means for preventing substantially all undesired gas in said fuel from passing through said outlet, said preventing means including said filter element separating said inlet side from said outlet side and having substantially no openings having a greater dimension than about 25 microns passing from said inlet side to said outlet side, said return line opening communicating with said chamber on said inlet side to receive air and fuel therefrom;* and [issue #4]
>
> *a fuel return line communicating with said return line opening and said fuel tank for delivery of air and fuel to said fuel tank.* [issue #5]

## Claim 15; Issues 1 & 2 - The Preamble and Initial Fuel Filter

The language in the preamble in claim 15 and in the second element, pertaining to the initial fuel filter, is identical to the language in claim 1, and the parties agree that the analysis should be the same. The Court therefore construes the language of the preamble

and the language pertaining to the initial fuel filter the same as claim 1, issues 1 and 2 above.

Claim 15; Issue 3 - Secondary Fuel Filter

Plaintiffs take the position that while the secondary fuel filter element is framed in means-plus-function terminology, the claim recites sufficient structure so that resort to § 112, ¶ 6 is improper. For the structure, Plaintiffs cite to the portion of the claim referencing "an inlet . . . for receiving fuel containing an undesired gas from said initial fuel filter means." Should resort to the specification be appropriate, Plaintiffs reference column 3, lines 45-46 – which pertains solely to the inlet – and assert that the proper construction is "an inlet or equivalents thereof."

Defendants, for their part, first assert that the "secondary fuel filter means" is a means-plus-function claim, requiring resort to § 112, ¶ 6, but cite to no structure in the specification. Then, in apparent agreement with Plaintiffs, Defendants assert that sufficient structure for receiving fuel containing an undesired gas appears to be included, such that reference to the specification is not necessary.

Tellingly, neither of the parties identifies the function that relates to the "secondary fuel filter means" or cites to any such structure; rather, both parties appear to reference only the "inlet." Perhaps this is explained by the fact that, as is the case with some of the earlier claims, this portion of the claim is not very well drafted. The Court does agree that this is not a means-plus-function claim, but not for the reason cited by the parties. Rather, the Court finds it is not a means-plus-function claim because there is no function

identified for this "initial fuel filter means." See Rodime, 174 F.3d at 1302 (an element does not invoke § 112, ¶ 6 where the claim element uses the word "means" but does not recite any function).  As drafted, the function of "receiving fuel containing an undesired gas from said initial fuel filter means" appears to further describe the "inlet," not the secondary fuel filter means.  This may explain why the parties made this connection. Once the cited function is construed as defining the inlet – as the language itself would suggest – it becomes clear that no function is recited for the overall secondary fuel filter means.  As such, the Court finds the word "means" in this element to be superfluous.[9]

Construing the claim, then, pursuant to standard construction rules, the Court agrees with the parties that most of the terms used to define the secondary fuel filter are unambiguous, and that they are used in the specification in a manner consistent with their ordinary meaning.  A person skilled in the art would understand the secondary fuel filter to include a vessel with walls defining an interior chamber, which vessel also includes (i) an outlet in  fluidic communication[10] with the engine, (ii) an inlet in fluidic communication

---

[9]  It is possible, linguistically, to read this as a means-plus-function claim, such that the fuel delivery system would include (i) a secondary fuel filter means for receiving fuel containing an undesired gas from said initial fuel filter means, including a vessel with walls that define an interior chamber, such chamber having an outlet in fluidic communication with the engine, and an inlet in fluidic communication with said initial fuel filter means, and (ii) a return line.  Such a reading, however, leaves the return line hanging without location, which is inconsistent with the further language of the claim and the specification, which place the return line in fluidic communication with the chamber.

[10]  For the same reason set forth above in connection with Claim 1, the Court rejects Defendants' attempt to define "fluidic communication" as "connected to."

with the initial fuel filter means for receiving fuel containing an undesired gas from said

initial fuel filter means, and (iii) a return line opening.  "Fluidic communication" is

defined the same as previously adopted by the Court.  This construction is consistent with

the manner in which the terms are used in the specification, and there is nothing in the

specification to suggest the patentee intended a different meaning.  <u>See</u> Abstract; col. 1,

line 62- col. 2, line 2; col. 2, lines 22-35; col. 3, lines 43-50; col. 5, lines 20-49; Figs. 1-3

& 5.  This construction is also consistent with the construction ultimately suggested by

both of the parties.  <u>See</u> Summary of the Parties' Positions, Doc. No. 55, p. 53.

 <u>Claim 15; Issue 4 - The Filter Element</u>

 The parties appear to be in agreement that the language pertaining to the filter

element is not ambiguous, but offer differing constructions of the language.  Defendants

again offer a proposed construction that a "filter element" is a "filter which allows fuel to

pass but not air," and in their argument assert that a filter element is an "air filter, as

opposed to a water filter or particulate filter, which allows fuel to pass but not undesired

gas."  As set forth above, the Court can perceive no reason either to define the air filter in

terms of what it is not or to expressly distinguish it from other types of filters that it does

not purport to be.  The Court also again rejects Defendants' limitation that the filter

"allows fuel to pass by not air."  The claim language itself states that the filter element

prevents "<u>substantially</u>" all undesired gas from passing through to said outlet, and

references a filter having openings of 25 microns or less.  Moreover, as set forth more

fully in the discussion of earlier claims, the specification consistently references the

separation of entrained and entrapped air or air bubbles.  See, e.g., col. 2, lines 22-35; col. 4, lines 40-45; col. 5, lines 21-49.

The filter element also includes a "providing means for preventing substantially all undesired gas in said fuel from passing through said outlet."  Although drafted as a means-plus-function claim, the Court agrees with Plaintiffs that the claim itself provides sufficient structure such that § 112, ¶ 6 does not apply.  See Sage Prods., 126 F.3d at 1427-28.  The claim language specifies that the filter element separates the inlet side from the outlet side, and is composed of a filter with openings no greater than 25 microns to prevent substantially all air from passing from the inlet side to the outlet side, and that the fuel return opening communicates with the inlet side to receive fuel and air from the inlet side.

Defendants suggest the word "communicate" be construed as a connection, while Plaintiffs assert no further definition is necessary.  While not the picture of proper english grammar, the Court finds that the term "said fuel return line communicating with said chamber on the inlet side" is not ambiguous as used in the claim.  Nor is it defined in the specification in a manner inconsistent with its ordinary meaning.  Similar to this Court's prior determinations, the term "communicating" as used herein is defined to mean that it permits transfer.

Defendants further assert that the filter element must be submerged below the surface of the fuel.  Such a requirement is in fact consistent with the preferred embodiment, but it is not contained within the language of this particular claim.  The

submersion limitation is expressly referenced in other claims, such as claim 8, but is not contained in this claim, which purports to describe a more general "fuel delivery system." As such, it is fair to assume the absence was intended. Modine Mfg. Co. v. U.S. Intern. Trade Com'n, 75 F.3d 1545, 1551 (Fed. Cir. 1996) ("Ordinarily a claim element that is claimed in general descriptive words, when a numerical range appears in the specification and in other claims, is not limited to the numbers in the specification or the other claims."), abrogated on other grounds, Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd., 234 F.3d 558 (2000); Transmatic, Inc. v. Gulton Inds., Inc., 53 F.3d 1270, 1277 (Fed. Cir. 1996). Moreover, one can easily envision an embodiment of this claim in which the filter element presents vertically within the entire length of the vessel, to create an inlet side on one side, and an outlet side on the other, which would not necessarily require submersion of the entire filter element.

Based on the claim language and the specification, the Court finds that one skilled in the art would understand the filter element to mean the following:

> "A filter element divides the chamber into an inlet side and an outlet side, and provides a means for preventing substantially all undesired gas in the fuel from passing through the outlet. The filter element which separates the inlet side from the outlet side has substantially no openings greater than 25 microns. A return line opening is in communication with the chamber in the inlet side to receive air and fuel therefrom. 'Communication' means that the air and fuel can transfer from the inlet side to the return line opening."

Claim 15; Issue 5 - The Fuel Return Line

Defendants again suggest the word "communicate" be construed as a connection with regard to this final element, while Plaintiffs assert no further definition is necessary.

Although it is hard for the undersigned to envision how the fuel return line could provide

communication between the return line opening and the fuel tank without it being

"connected to" such elements, others skilled in the art may envision such a method, and

such a limitation is not necessarily required by the claim's usage of the word

"communication."  The Court therefore adopts the same meaning of "communication" as

with issue #4, above, which meaning is similar to that used with regard to other claims,

namely, permitting transfer between elements.  As such, the Court finds that one skilled in

the art would understand the final element of Claim 15 to mean as follows:

> "A fuel return line provides communication or transfer between the return
> line opening and the fuel tank for delivering air and fuel from the opening to
> the fuel tank."

    **IT IS THEREFORE ORDERED** that claims 1, 2, 7, 8, 9, 14 and 15 shall be

construed in a manner consistent with this Memorandum and Order.

    **IT IS FURTHER ORDERED** that the parties shall proceed with mediation as set

forth in this Court's Order dated April 26, 2005.  (Doc. No. 63).

    **IT IS FURTHER ORDERED** that Defendants' Motion for Partial Summary

Judgment (Doc. No. 52), is **DENIED without prejudice**.  Following the conclusion of the

mediation conference, the Court shall hold a conference with counsel at which time the

Court will set a schedule pertaining to the motion for summary judgment and other further

proceedings.

_Audrey G. Fleissig_
AUDREY G. FLEISSIG
United States Magistrate Judge

Dated this 7th day of March, 2006.