UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

CHARLES L. EKSTAM,                         )
FUEL PREPORATOR INTERNATIONAL, )
INC., and EKSTAM WORLDWIDE, INC.,  )
                                           )
          Plaintiffs,                      )
                                           )
     vs.                                   )          Case No. 4:04CV00187 AGF
                                           )
C. BRAD EKSTAM,                            )
DIESEL PERFORMANCE PRODUCTS,      )
and C. BRAD EKSTAM d/b/a DIESEL      )
PERFORMANCE PRODUCTS CO.,          )
                                           )
          Defendants.                      )

## MEMORANDUM AND ORDER

This matter is before the Court[1] on the parties' cross motions for summary

judgment. Plaintiff Charles L. Ekstam is the inventor and owner of a patent covering a

fuel delivery system for removing air from fuel, primarily in connection with diesel

engines, Patent No. 5,355,860 (the "'860 patent"). Defendant C. Brad Ekstam owns a

more recent patent or patents also related to products for removing air from fuel.

Through Defendant Diesel Performance Products, Defendants sell a system for removing

air from fuel for use with an engine, the FASS 150. Plaintiffs contend the FASS 150[2]

_____

[1] The parties consented to jurisdiction by the undersigned United States
Magistrate Judge pursuant to 28 U.S.C. § 636(c).

[2] Although Defendants sell numerous related products, the parties agreed to treat
the FASS 150 as representative of the accused products. See Doc. #234-3, at n.2 ("Based
on agreement of counsel, the parties agreed to proceed with respect to the infringement
issues using the FASS 150 model as representative of the remaining FASS Accused
Products.").

infringes the '860 patent. Specifically, Plaintiffs have asserted that the FASS 150 infringes Claims 1-4, 7, 8-10, 14, and 15.

The parties have filed numerous motions for summary judgment pertaining to validity and infringement. This Order deals with the parties' cross-motion for summary judgment regarding infringement. Plaintiffs have asserted that they are entitled to judgment as a matter of law regarding claims 8, 9, 10, and 14 [Doc. #139]. Defendants have opposed Plaintiffs' motion, and filed their own motion for summary judgment [Doc. #147], asserting that they are entitled to a judgment of non-infringement pertaining to all asserted claims (1-4, 7, 8-10, 14, and 15), which motion Plaintiffs have opposed. Because there is no genuine issue of material fact with regard to any infringement issue, summary judgment is appropriate, and the Court finds that Defendants are entitled to a judgment of non-infringement on all asserted claims.

## Background

In approximately 1990, Plaintiff Charles L. Ekstam owned and operated a diesel truck. He noted that the engine often ran roughly and did not perform optimally, and, as more fully described in the Background of the Invention, determined that this was caused by the fact that undesired air was entrained in the fuel and was then delivered to the fuel cylinder. He addressed this problem with the invention of a fuel delivery system that includes an air separation chamber for removing air trapped in the fuel. In the invention, the fuel without the undesired air bubbles is delivered to the cylinder, while the fuel containing the undesired bubbles of air is harmlessly carried back to the fuel tank. In its preferred mode, the invention includes a multi-stage filter system for removing

particulates, water, and air from the fuel before delivery to the cylinder of an internal combustion engine.

Defendant C. Brad Ekstam is the son of Plaintiff Charles Ekstam. Brad Ekstam worked with his father for some years in one or more companies dedicated to the development and marketing of the fuel delivery system of the '860 patent. He thereafter left the company, and later developed the FASS 150, which also achieves the result of removing air from fuel prior to its delivery to an engine. The FASS 150 also employs the concept of returning the fuel containing the undesired air to the fuel tank. Plaintiffs contend that the FASS 150 and its related products infringe the '860 patent.

The Court held a <u>Markman</u>[3] hearing earlier in the case. Following the filing of the parties' voluminous motions, the Court expressed reservations with regard to whether the term "immersion" in Claim 1 had been properly construed in the <u>Markman</u> Order. The parties were therefore directed to address this issue, as well, at a hearing the Court had scheduled on certain of the potentially case-dispositive motions, including the cross motions for summary judgment pertaining to infringement. On July 17, 2007, the Court held a hearing, at which the parties addressed, at length, both the cross motions for summary judgment on the issue of infringement/non-infringement, as well as the proper construction of the term "immersion" in Claim 1. At the hearing, Plaintiffs specifically requested leave to file a supplemental brief pertaining to the issue of infringement if the Court were inclined to amend its prior <u>Markman</u> Order. The Court thereafter did issue an

---

[3] <u>Markman v. Westview Instruments, Inc.</u>, 517 U.S. 370 (1996).

amended <u>Markman</u> Order, amending only the construction of that single term in Claim 1.

Per Plaintiffs' request, the Court permitted Plaintiffs to file a supplemental brief, in which

Plaintiffs asserted additional arguments related to Claim 1, including arguments under the

doctrine of equivalents.

Before proceeding to the merits, the Court notes that Plaintiffs have filed <u>Daubert</u>

motions to exclude the opinions of Thomas S. Wanke [Doc. Nos. 175 & 200]. These

motions are denied. In connection with the summary judgment motions, however, the

Court has not relied on the conclusions of Mr. Wanke with respect to the presence or

absence of any claim elements. With respect to Plaintiffs' <u>Daubert</u> motion to strike

Defendants' supplemental technical information in support of Defendants' motion for

summary judgment of non-infringement [Doc. # 213], the Court has neither reviewed nor

relied on said document, and as such, this motion will be denied as moot.[4]

Plaintiffs also filed a Motion to Strike the Declaration of C. Brad Ekstam, filed in

Opposition to Plaintiffs' Motion for Summary Judgment of Infringement [Doc. #210],[5]

contending that Defendant Ekstam was not disclosed as an expert; that because his

opinions are based on scientific, technical, or other specialized knowledge, they are not

within Rule 701; and that nearly every paragraph of the declaration contains opinion

---

[4] Plaintiffs' <u>Daubert</u> motion to Exclude and Strike the Expert Report and Testimony of Michael Lewis [Doc. #179], pertaining to Defendants' damages expert, as well as Defendants' motion in limine directed at Plaintiffs' damages expert [Doc. #132] are both denied as moot. Likewise, to the extent Defendants' Motion to Exclude Dr. Flanigan's Expert Report and Testimony [Doc. #157] seeks to exclude opinions on defenses other than infringement, it is denied as moot, and is otherwise denied.

[5] Document #207 is a duplicate of this motion, without the attachments, and is therefore stricken.

testimony not previously identified and for which no proper foundation is provided. Though a disclosure of Defendant Ekstam as an expert would have been the preferred course, the Court in general finds little merit in Plaintiffs' motion. Plaintiffs took Defendant Ekstam's deposition, and apart from generalized and conclusory allegations, Plaintiffs have not identified any harm suffered by virtue of the failure to identify the inventor of the alleged infringing product as an expert. Moreover, Defendant Ekstam's declaration, for the most part, complies with the standard set forth in Federal Rule of Civil Procedure 56(e). As such, Plaintiffs' motion will be denied. Here, too, the Court notes, however, that in considering the motions for summary judgment related to infringement, it has relied on Plaintiffs' affidavit only to the extent that it describes how the alleged infringing product operates, a matter as to which the Court has observed no dispute.

The briefs in this case are voluminous, and there is no reason for the Court to address each and every argument raised by the parties, although the Court has read and fully considered all of those arguments, except as noted above. Instead, this Order will focus on the disputes that make a difference to the summary judgment issues. These rulings are based on all the briefs, evidence, and arguments presented by the parties.

## DISCUSSION

Summary judgment is appropriate only if there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "When both parties move for summary judgment, the court must evaluate each

motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration." DeMarini Sports, Inc. v. Worth, Inc., 239 F.3d 1314, 1322 (Fed. Cir. 2001).

Infringement analysis involves a two-step process: first, an interpretation of the claims in dispute; and second, a comparison of the properly construed claims with the accused product. Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc); Markman v. Westview Instruments, Inc., 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc). Plaintiffs bear the burden of establishing a prima facie showing of infringement as to the accused device. See L & W, Inc. v. Shertech, Inc., 471 F.3d 1311, 1318 (Fed. Cir. 2006). Literal infringement exists where the accused product contains each and every one of the limitations contained in one or more of the patent claims, i.e., "when the properly construed claim reads on the accused device exactly." Cole v. Kimberly-Clark Corp., 102 F.3d 524, 532 (Fed. Cir. 1996); accord DeMarini, 239 F.3d at 1331. If a single limitation is missing or is not met as claimed, there is no literal infringement. London v. Carson Pirie Scott & Co., 946 F.2d 1534, 1538-39 (Fed. Cir. 1991).

Where there is no literal infringement, infringement may still be found under the doctrine of equivalents, when the accused product is equivalent to the patented invention. Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605, 607-08 (1950). Under the "all-elements rule," it is not enough for there to be overall equivalence between the invention and the accused product; the doctrine of equivalents must be applied to individual claim elements, and a finding of infringement requires that the accused product contain each claim limitation or its equivalent. Warner-Jenkinson Co. v. Hilton Davis

Chem. Co., 520 U.S. 17, 29 (1997).  Equivalence is often determined under the "function-way-result" test, especially when, as here, mechanical devices are at issue.  See Id. at 39.  Under this "triple identity" test, an accused element is equivalent to a claim limitation "'if it performs substantially the same function in substantially the same way to obtain the same result.'"  Graver Tank, 339 U.S. at 608 (quoting Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 42 (1929)).  Another important factor is "whether persons reasonably skilled in the art would have known of the interchangeability of an ingredient not contained in the patent with one that was."  Id. at 609.  All three prongs of the test must be satisfied for a finding of equivalence; the court must analyze "the role played by each element in the context of the specific patent claim."  Warner-Jenkinson, 520 U.S. at 40.

The question of infringement, whether it be literal or under the doctrine of equivalents, is normally a question of fact, for the jury.  Cook Biotech Inc. v. Acell, Inc., 460 F.3d 1365, 1373 (Fed. Cir. 2006).  Summary judgment may be granted, however, where there is no genuine issue of material fact and no reasonable jury could find that every limitation recited in the properly construed claim is or is not found in the accused device.  Bai v. L & L Wings, Inc., 160 F.3d 1350, 1353 (Fed. Cir. 1998).  As the Supreme Court has recognized, "[w]here the evidence is such that no reasonable jury could determine two elements to be equivalent, district courts are obliged to grant partial or complete summary judgment."  Warner-Jenkinson, 520 U.S. at 39 n.8; see also DeMarini, 239 F.3d at 1334 (finding equivalence "untenable in light of the claims as properly construed," and granting summary judgment).  Here, although the parties have filed

voluminous briefs, it is clear, both from their briefs and from the oral argument, that there is no real dispute as to the operation of the accused device. As such, the claims are amenable to summary judgment. See Desper Prods., Inc. v. QSound Labs, Inc., 157 F.3d 1325, 1332 (Fed. Cir. 1998) (when "the composition of the allegedly infringing process or product is undisputed . . . literal infringement collapses into claim construction – a matter of law – amenable to summary judgment"); accord Freedman Seating Co. v. Am. Seating Co., 420 F.3d 1350, 1354 (Fed. Cir. 2005) (granting summary judgment with respect to infringement when there was no real dispute as to structure of the accused product).

**A. Claims 1-4 and 7**

Defendants have asserted that they are entitled to summary judgment of non-infringement with respect to Claim 1. They further contend that inasmuch as claims 2, 3, 4, and 7 depend from Claim 1, they are also entitled to a judgment of non-infringement with respect to these dependent claims. Plaintiffs, in their own motion, have not asserted that they are entitled to judgment as a matter of law on these claims, but rather have asserted that Defendants are not entitled to summary judgment because Defendants cannot show that there is no literal infringement or infringement under the doctrine of equivalents,[6] or because issues of fact preclude judgment as a matter of law.

---

[6] The Court does not read Plaintiffs' supplemental briefs as asserting their own entitlement to summary judgment for infringement of Claim 1, but rather as asserting that with the new construction, Defendants still cannot show that there is no literal infringement, and adding new arguments under the doctrine of equivalents. Certainly, Plaintiffs had not previously filed any motion for summary judgment of infringement related to Claim 1, even when presented with the previous construction of the claim they

Primarily at issue is the secondary fuel filter of Claim 1, which was construed by the Court as follows:

> The secondary fuel filter also includes a vessel defining a hollow interior chamber, which chamber is in fluidic communication with a return line, which is in fluidic communication with the fuel tank, for returning fuel and undesired gas to the fuel tank. The secondary fuel filter also includes a filter media positioned within the chamber of the vessel so that the filter can be submerged in, or fully covered by, the fuel received in the chamber. The secondary fuel filter also has a conduit located within the filter media for delivering fuel passing through said filter media to the outlet.

It is important to note that although the claim language itself uses the term "secondary fuel filter means," Plaintiffs asserted at the <u>Markman</u> stage that in light of the structure specified, it was not a means-plus-function claim, and the Court agreed.

Defendants assert that many limitations disclosed by Claim 1 of the patent are absent in the accused product. The Court agrees with Plaintiffs that most of these arguments must be rejected as inconsistent with the <u>Markman</u> ruling. For example, Defendants assert that the '860 patent does not disclose or teach a return line anywhere but on the inlet (dirty) side, which the Court specifically found was not a limitation of Claim 1.

Nevertheless, the Court does find that the FASS 150 does not literally infringe the patent, because it does not contain the limitation of the '860 patent of a "filter media positioned with the chamber of the vessel so that the filter can be *submerged in, or fully*

---

supported. Although Plaintiffs reference Doc. #140 in their supplemental briefs, that motion pertained to Claims 8, 9, 10, and 14, and not to Claim 1. In any event, the Court's ruling with respect to the non-infringement of Claim 1 would be the same, even if Plaintiffs' supplemental briefs were construed to assert their own claim for summary judgment based on literal infringement or infringement under the doctrine of equivalents.

*covered by, the fuel* received in the chamber." The Court agrees with Defendants that a filter that is partially submerged is not the same as one that is fully submerged. See Sage Prods., Inc. v. Devon Indus., Inc., 126 F.3d 1420, 1424 (Fed. Cir. 1997) (rejecting the assertion that "having two constrictions below the top of the container is the same, for purposes of infringement, as having one constriction above and one constriction below," and finding that such a construction would essentially remove the "top of the container" limitation from the claim).

Plaintiffs submit the Supplemental Expert Witness Report and Disclosures of Virgil J. Flanagan [Doc. #250-2] in support of their contention that this limitation is met. Dr. Flanagan described a test he performed in which he cut out a window on the spin-on filter of the FASS 150, near the top of the filter media, and observed its performance. The very photographs attached by Dr. Flanagan belie his contention, however. As Defendants correctly note, Plaintiffs' Exhibits 5 and 6, attached to Dr. Flanagan's report, plainly show that the filter media of the FASS 150 is not submerged in or fully covered by the fuel received in the chamber. Nor is the Court persuaded that such submersion occurs by virtue of the fact that fuel flows through a series of openings at the top of the canister, around the filter media.

In their supplemental reply, Plaintiffs do not deny that air bubbles occupy the area both below and above the top of the filter element of the accused device, as shown on Plaintiffs' Exhibits 5 and 6. Plaintiffs argue, however, that the fact that air "bubbles" exist above the fuel filter establishes that the fuel level indeed must be above the filter, as "air bubbles" must have a surrounding media. This argument, however, stretches any

definition of the fuel level limitation in this context beyond all reason, and the Court rejects that a reasonable jury could find that the limitation of a fuel filter positioned so that it can be submerged in the fuel is present in the accused device.

Plaintiffs further assert that infringement may also be found under the doctrine of equivalents. They contend that "the function served by the position of the filter media within the chamber of the vessel in the FASS 150 is to allow air bubbles, trapped on the filter media, to float upwardly and be discharged through the fuel return line," which function, they assert, "is performed by positioning the filter media below the return port." But this argument also cannot stand.

Under the clear language of the patent, it is undisputed that the filter media limitation in Claim 1 itself separates the air bubbles from the fuel, stopping substantially all such bubbles on the outside of the filter media. And it is the filter media's positioning or "submersion" below the operating fuel level that permits the air bubbles to float upward – away from the filter media – and be discharged through the return line. This, consistently, is the teaching of the '860 patent. Plaintiffs now seek to assert that submersion is irrelevant, and that the sole critical factor is that the filter media be positioned <u>below the return port</u>. This argument appears to be fashioned simply to support infringement, and finds no basis in the teaching of the '860 patent. The '860 patent describes the positioning of the filter media relative to the fuel level, and nowhere expressly speaks to its positioning vis-a-vis the return port.

"The doctrine of equivalents prevents an accused infringer from avoiding infringement by changing only minor or insubstantial details of a claimed invention while

retaining their essential functionality." Id. at1424.   Neither the doctrine of equivalents nor the case law thereunder, however, will "authorize a rearrangement of structural claim limitations."  DeMarini, 239 F.3d at 1333.  As the Court recognized in Sage, where the patent "claims a precise arrangement of structural elements that cooperate in a particular way to achieve a certain result," an accused product that achieves a similar result but "does so by a different arrangement of the elements," does not infringe under the doctrine of equivalents.  Sage, 126 F.3d at 1425.

Moreover, in the FASS 150, while some air bubbles are indeed separated by the filter media and float upward for ultimate discharge, there is no dispute that the manner in which the air bubbles are separated and discharged is that the undesired air builds up, creating a void, which is then forced *through* the filter media, for discharge on the other side of the filter media.  As Plaintiffs' own expert acknowledged, if the filter media allows air bubbles to pass, then it is not doing what Claim 1 is describing.  See Transcript of  Markman Hearing, p. 111:20 - 111:23; Doc. #212, ¶ 32.  Thus, even if one assumes that the filter media in the FASS 150 performs the same function to achieve substantially the same result as the filter media limitation of Claim 1, it does not perform that function in the same way.  Accordingly, Defendants are entitled to a judgment of non-infringement on Claim 1.  See Freedman Seating Co., 420 F.3d at 1361 (reversing district court's grant of summary judgment of infringement and ordering entry of a judgment of non-infringement, finding that although both devices achieved the same overall result, the limitation of a "slidably mounted" member was not equivalent to a "rotatably mounted" member); Sage, 126 F.3d at 1424 (finding that assertion that "having two constrictions

below the top of the container is the same, for purposes of infringement, as having one constriction above and one constriction below," would essentially remove the "top of the container" limitation from the claim).

Because Claims 2-4 and 7 depend from Claim 1, Defendants are also entitled to judgment on the issue of infringement on these dependent claims.  See Wolverine World Wide, Inc. v. Nike, Inc., 38 F.3d 1192, 1199 (Fed. Cir. 1994) (where independent patent claim was not infringed as a matter of law, dependent claims were also not infringed).

**B.  Claims 8-10**

The FASS 150 also does not infringe claims 8, 9, and 10 of the patent.  Claim 8 of the patent, as construed by the Court requires:

> A filter for removing entrained air from fuel received from a fuel tank prior to delivery to an engine comprising:
>
> a substantially enclosed vessel that includes a fuel inlet, a fuel outlet leading to the engine, and a fuel return line leading to the fuel storage tank. The vessel includes a normally upright overflow tube that presents a substantially open upper portion, which defines an operating fuel level within[7] the vessel.  The vessel further includes a threaded coupling or equivalents thereof for detachably mounting a cartridge which is in direct fluidic communication with such outlet, allowing fluid to travel directly between the cartridge and such outlet; and
>
> a air removal filter cartridge detachably received within said vessel, said cartridge being positioned below said operating fuel level for allowing air

---

[7]  The Markman Order contained a typographical error, and incorrectly reads "with," instead of "within."  This error should have been obvious to the parties.  The parties did not request any construction of this portion of the limitation, and as incorrectly drafted the language makes no sense.  Indeed, Plaintiffs repeatedly asserted in the Joint Claim Construction Memorandum that the tube defined an operating fuel level "within" the vessel.  See, e.g., Doc. #55, p. 38.

bubbles separated by said cartridge to flow upwardly to said fuel level and be discharged through said fuel return line.

The Court finds that there are several limitations in Claim 8 that are not found in the FASS 150.

a.      A normally upright overflow tube that presents a substantially open upper portion, which defines an operating fuel level within the vessel

First, the FASS 150 lacks the element of a "normally upright overflow tube." Plaintiffs point to the annular opening between the coupling and the draw tube ("U"), but this is not an upright tube, and even if it could be defined as an upright tube, it is not an overflow tube. The testimony from Defendants' experts cited by Plaintiffs cannot reasonably be read to concede the existence of this element in the FASS 150, and the conclusory statements of Plaintiffs' expert that the opening ("U") constitutes an upright overflow tube are entitled to little weight and run contrary to language of the claim as construed. As Defendants correctly note, the excess fuel and air flow up and under the lip of this opening; nothing flows *over* into the opening. See DeMarini, 239 F.3d at 1331 (holding summary judgment of non-infringement proper where insert limitation of bat in patent was contained within the bat frame, and structural insert of alleged infringing product was not contained within bat frame); Sage, 126 F.3d at 1432 (finding no infringement where patent provided for horizontal displacement between first and second openings, and accused product had alignment that did not result in horizontal displacement). Moreover, the flow of fluid through this opening does not present a

substantially open upper portion, nor does it define the operating fuel level within the vessel.

> b.    Air removal cartridge detachably received with the vessel and positioned below the operating fuel level

The Court also finds that the air removal cartridge limitation in Claim 8 is not present in the accused product. Plaintiffs identify the Fleetguard spin-on filter ("R") as the "cartridge," and identify as the "substantially enclosed vessel" ("N") the cartridge and the entire side of the metal plate to which it is attached. Doc. #234. Although Defendants do not phrase their argument in quite this way, the Court notes as an initial matter that it has substantial difficulty with Plaintiffs' contention that the spin-on filter and the full metal plate in the accused product together constitute the "substantially enclosed vessel" limitation found in Claim 8. In connection with the <u>Markman</u> hearing, Plaintiffs asserted that the term "substantially enclosed vessel" was unambiguous. The Court agrees, but finds that one ordinarily skilled in the art would not consider the extensive metal plate of the accused product to be part of a "substantially enclosed vessel."[8] As such, there is no separate vessel and cartridge, as required by the patent's limitations. Nor is there a way for the cartridge to be detachably received "within said vessel," as required. Even if one adopts Plaintiffs' contention that the spin-on filter ("cartridge") and metal plate together are a substantially enclosed vessel, the cartridge is

---

[8]    If the metal plate is not part of the "substantially enclosed vessel," it follows that the limitation that requires that the fuel return line leading to the fuel storage tank be *included* in the substantially enclosed vessel is also absent, as the fuel return line is attached to the outlet ("H") in the metal plate. An internal location is different than an external location. <u>See</u> <u>DeMarini</u>, 239 F.3d at 1332, 1334.

not received "*within* the said vessel," nor is the cartridge positioned below the operating fuel level. Indeed, as Plaintiffs' own expert demonstrated, in normal operation, the operating fuel level of the FASS 150 is below the top of the spin-on filter (which Plaintiffs identify as the "cartridge").[9]

For each of these reasons, the Court finds no direct infringement with respect to Claim 8. In addition to asserting that there was no direct infringement, Defendants asserted in their motion for summary judgment that there was no infringement under the doctrine of equivalents. In response to Defendants' motion, Plaintiffs did not argue that there was infringement under the doctrine of equivalents. With respect to some of the absent limitations, such as the normally upright overflow tube, moreover, Plaintiffs could not succeed under the doctrine of equivalents.

Inasmuch as Claims 9 and 10 depend from independent Claim 8, Defendants are likewise entitled to a judgment of non-infringement with respect to these dependent claims.

### C. Claim 14

For many of the same reasons, the FASS 150 also does not infringe Claim 14. As construed in the <u>Markman</u> Order, Claim 14 requires:

> A filter for removing entrained and entrapped air from fuel received from a fuel tank prior to delivery to an engine comprising:

---

[9] Defendants further argue that the accused product does not have a return line located on the inlet (or dirty) side of the filter, but as Plaintiffs correctly note, this limitation was rejected by the Court in its <u>Markman</u> Order, and is not a part of the patent's claim limitations.

a substantially enclosed vessel including a normally upright overflow tube, presenting a substantially open margin, which defines an operating fuel level within said vessel. The vessel also includes a threaded coupling or equivalents thereof for detachably mounting a cartridge which is in direct fluidic communication with such outlet, allowing fluid to travel directly between the cartridge and such outlet; and

an air removal filter cartridge that is detachably positioned within said vessel, which includes a filter element having substantially no opening therethrough with a dimension greater than about 25 microns for substantially complete separation of air from the fuel. The filter cartridge is positioned below the operating fuel level for allowing air bubbles separated by said cartridge to float upwardly to the fuel level and be discharged through said fuel return line.

As set forth above, the FASS 150 does not have a "normally upright overflow tube," nor does any such overflow tube present a substantially open margin which defines an operating fuel level. Indeed, the operating fuel level may vary and is a result of factors other than an overflow tube. The FASS 150 does include a threaded coupling, and contrary to Defendants' assertions, the Court finds that the cartridge is in direct fluidic communication with the outlet. However, for the same reasons as above, the Court finds that inasmuch as the housing and spin-on filter of the FASS 150 cannot reasonably be found to be a "substantially enclosed vessel," the alleged infringing product does not have a separate vessel on which the cartridge (identified by Plaintiffs as the spin-on filter) can be threadably mounted.

Moving to the next limitation, if, as the Court finds, the cartridge is synonymous with the "vessel," the air removal filter cartridge is not "*detatchably*" positioned within the vessel. Rather, as Defendants correctly note (and Plaintiffs admitted), the only way to detach the filter cartridge would be to cut the filter cartridge open and destroy it. Even

accepting Plaintiffs' delineation of the "vessel" as the spin-on filter and housing, the filter cartridge is not detachably positioned "*within*" the vessel. The final limitation is also absent, as the filter cartridge in the FASS 150 is not positioned "*below*" the operating fuel level. As with Claim 8, Plaintiffs have neither asserted nor demonstrated any infringement under the doctrine of equivalents, and with respect to some of the limitations, could not do so.

### D. <u>Claim 15</u>

Defendants have asserted that they are entitled to a judgment of non-infringement on Claim 15. At issue is the filter element, which was construed by the Court as follows:

> a filter element divides the chamber into an inlet side and an outlet side, and provides a means for preventing substantially all undesired gas in the fuel from passing through the outlet. The filter element which separates the inlet side from the outlet side has substantially no openings greater than 25 microns. A return line opening is in communication with the chamber in[10] the inlet side to receive air and fuel therefrom. "Communication" means that the air and fuel can transfer from the inlet side to the return line opening.

Defendants, again, word their argument somewhat differently, focusing on the fact that the filter media (which must have no openings greater than 25 microns) does not prevent substantially all undesired gas from passing through in the FASS 150. The fact is, however, that filter element in the FASS 150 does not "*divide*" *or "separate" the chamber into an inlet side and outlet side* as a means of preventing substantially all undesired gas from passing through the outlet.

---

[10] This is a typographical error, and should have read "on," instead of "in," but the difference is not material and the Court's ruling is the same regardless.

Further, Claim 15 requires that the return line opening be in communication with the chamber on the inlet side that is created by the filter element, to receive the undesired air and fuel. In the FASS 150, however, the undesired bubbles of air that are initially separated by the filter media are forced through the filter element and then returned through the return line opening on the other side of the filter. As such, to the extent any such inlet/outlet division is created by the filter element – as required by the claim limitation – the return line opening does not communicate with the chamber on the inlet side. Plaintiffs assert that the placement of the return line opening is irrelevant, so long as it ultimately communicates with the inlet side to receive air and fuel, but the Court finds that this interpretation strains the language of the limitation, rendering meaningless the multiple distinctions between the inlet and outlet sides set forth in the claim and the specific limitation that the return line communicate with the chamber *in (on) the inlet side*. And again, while Plaintiffs do not raise the doctrine of equivalents in response to Defendants' arguments, when one examines the filter element in the FASS 150 – rather than comparing the inventions as a whole – it is clear that the filter element in the FASS 150 does not perform the same function as the claim limitation at issue, nor does it perform it in the same way or yield the same result. See DeMarini, 239 F.3d at 1333-34.

## CONCLUSION

For the foregoing reasons, Defendants are entitled to summary judgment of non-infringement on all asserted claims, and Plaintiffs' cross motion for summary judgment of infringement is denied. Defendants have not filed any counterclaim asserting invalidity.

Having determined that the accused product does not infringe the patent, it is unnecessary for the Court to reach the remaining summary judgment motions filed by the parties.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' motion for summary judgment of infringement regarding claims 8, 9, 10, and 14. [Doc. #139] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment of non-infringement regarding claims 1-4, 7, 8-10, 14, and 15 [Doc. #147] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' motion for summary judgment on validity of claims under 35 U.S.C. §102 [Doc. #142] is **DENIED as moot**.

**IT IS FURTHER ORDERED** that the following motions filed by Defendants are **DENIED as moot**: Motion for summary judgment of invalidity under 35 U.S.C. 102(b) [Doc. #125]; Motion for summary judgment of invalidity for lack of enablement and utility [Doc. #145]; Motion for summary judgment of invalidity as anticipated and/or obvious [Doc. #151]; Motion for summary judgment of invalidity for indefiniteness [Doc. #154]; Motion for summary judgment for failure to present any evidence of infringement [Doc. #170].

**IT IS FURTHER ORDERED** that any other remaining motions are **DENIED as moot**.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
United States Magistrate Judge

Dated this 31st day of August, 2007